UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TRISTAN SCHULTIS, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08CV00083 LMB |
| ) | |
| ADVANCED HEALTHCARE ) | |
| MANAGEMENT SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Amended Complaint of Plaintiff Tristan Schultis, M.D. ("Dr. Schultis"), alleging breach of contract claims against Defendant Advanced Healthcare Management Services, LLC ("AHCMS").  AHCMS has filed a counterclaim alleging breach of contract and unjust enrichment claims against Dr. Schultis.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).

Presently pending before the court is plaintiff's Motion for Partial New Trial Pursuant to Rule 59 of the Federal Rules of Civil Procedure.  (Doc. No. 66).  Also pending is defendant's Motion for New Trial Pursuant to Rule 59.  (Doc. No. 102).  In addition, the bifurcated issues pertaining to medical malpractice tail coverage claims remain pending.

## Background

On August 9, 2011, the court entered Partial Summary Judgment in favor of Defendant Advanced Healthcare Management Services, LLC ("AHCMS"), finding that plaintiff was obligated under the terms of the contract at issue to provide medical malpractice tail coverage. (Docs. No. 60, 61).

On September 9, 2011, the court entered a Stipulated Order Bifurcating Claims, in which the court bifurcated all of the issues pertaining to the medical malpractice insurance tail coverage claims, including, without limitation, plaintiff's motion for reconsideration, determination of damages to defendant for plaintiff's failure to provide said coverage, defendant's claims in equity that plaintiff be ordered to provide medical malpractice tail coverage, defendant's claim for reimbursement of the insurance premiums paid from April 2008 to December 2008, and the amounts of any offsets to be applied against any judgment entered against the defendant. (Doc. No. 85).

On September 14, 2011, after a three-day trial, a jury found in favor of Plaintiff Tristan Schultis on plaintiff's claim for breach of contract against Defendant AHCMS, and awarded plaintiff $132,826.65. (Doc. No. 96).

An evidentiary hearing on the issues pertaining to the medical malpractice insurance tail coverage claims was held on December 14, 2011. (Doc. No. 106). The parties have filed post-hearing briefs. (Docs. No. 110, 111, 113).

## Discussion

As previously stated, both parties have filed motions for a new trial. (Docs. No. 66, 102). In addition, the issues regarding the medical malpractice insurance tail coverage remain pending. The undersigned will discuss these issues in turn.

**I.      Plaintiff's Motion for Partial New Trial**

Plaintiff filed a Motion for Partial New Trial Pursuant to Rule 59 on August 18, 2011. (Doc. No. 66). Pursuant to the court's scheduling order, plaintiff filed a Memorandum in Support of Motion for Partial New Trial Pursuant to Rule 59 on September 19, 2011. (Doc. No. 99). Defendant filed a Reply and Memorandum in Opposition to plaintiff's Motion for Partial New

Trial on September 28, 2011.  (Doc. No. 100).  On September 30, 2011, plaintiff filed a Reply. (Doc. No. 101).  In addition, both parties provided further argument regarding plaintiff's Motion for Partial New Trial in their post-hearing briefs.  (Docs. No. 110, 113).

Plaintiff argues that the Partial Summary Judgment should be vacated for the following reasons: (1) the jury's verdict established that AHCMS breached the contract on "the most cardinal aspect of the agreement," (2) AHCMS repudiated the contract by its failure to comply with its obligation of good faith and fair dealing; (3) enforcement is either impossible or commercially impracticable; (4) enforcement would mean plaintiff "wasted three days and a herculean effort for a verdict" that would be diminished by six-figure premiums; and (5) Dr. Schultis' "innocent error" in not advising AHCMS in writing of his intent not to renew "hardly merits forfeiture of the verdict reached."  (Docs. No. 99, 110).

A motion to alter or amend the judgment under Rule 59(e) must be served no later than ten days after the entry of "the judgment."  Fed.R.Civ.P 59(e).  District courts enjoy broad discretion in ruling on such motions.  See Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993).  A Rule 59(e) motion cannot be used "to introduce new evidence that could have been adduced during pendency of the...motion...Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time."  Id.  See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) ("Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'").

Plaintiff does not challenge the court's determination that plaintiff is obligated to provide tail coverage under the clear terms of the contract.  Rather, plaintiff claims that the Partial

Summary Judgment should be set aside because enforcement of the judgment would be inequitable. For the reasons discussed below, plaintiff's claim lacks merit.

Plaintiff notes that the jury in this matter awarded plaintiff $132,826.65. Plaintiff claims that the court should give "great deference to the advisory verdict handed down," in determining whether a breaching party can receive equitable relief. (Doc. No. 99). Plaintiff cites no authority for this proposition that the court should vacate the Partial Summary Judgment and enter only a judgment on the verdict of the jury. In fact, plaintiff filed a joint motion to bifurcate the issue of tail coverage from the issues considered by the jury, which the court granted. Plaintiff's argument that the court should vacate its Partial Summary Judgment based on the jury's verdict on a separate issue lacks merit.

The court held that the contract was clear and unambiguous as to plaintiff's obligation to provide tail coverage in the event that he optionally terminates his employment. Dr. Schultis testified as follows in his deposition:

> [AHCMS' Counsel]: Look at No. 4. No. 4 is optional termination. Either hospital or physician may terminate physician's employment with or without cause at any time by giving notice to the other party unless sixty days prior to termination.
> Isn't that how you terminated?
>
> [Dr. Schultis]: That works.
>
> [AHCMS' Counsel]: Okay.
>
> [Dr. Schultis]: That's exactly how I terminated.

(Def's Ex. BB, p. 114).

The evidentiary hearing held on December 14, 2011 provided further support for the court's finding. Plaintiff testified that he notified staff at AHCMS that he was leaving in February 2008. (Doc. No. 112, p. 102, 109). Plaintiff later testified on cross examination, however, that he was considering future employment for himself and his wife with AHCMS in February 2008.

- 4 -

(Id. at 126-27).  Plaintiff admitted that, although he was planning to undergo knee surgery in April 2008, he was unsure whether he was leaving AHCMS in February 2008, and that he was "pretty happy" at that time.  (Id. at 128).  Plaintiff never testified that he provided direct notice to AHCMS' CEO Paula Harris that he intended to leave sixty days prior to the end of his term as the contract requires.  Rather, plaintiff notified Ms. Harris of his intention to leave on March 31, 2008, ten days before plaintiff's term ended.

Plaintiff also contends that defendant repudiated the contract by its failure to comply with its obligation of good faith and fair dealing.  This argument is similarly of no avail.  The jury did not, in fact, find that defendant "repudiated" the contract or breached its obligation of good faith and fair dealing.  Rather, the jury found that defendant breached its agreement to pay plaintiff a bonus, an issue separate from the issue of tail coverage.

Plaintiff's remaining arguments are based in equity.  Plaintiff argues that enforcement is either impossible or commercially impracticable, enforcement would mean plaintiff "wasted three days and a herculean effort for a verdict" that would be diminished by six-figure premiums, and that his "innocent error" in not advising AHCMS in writing of his intent not to renew "hardly merits forfeiture of the verdict reached."  The undersigned finds these arguments unpersuasive.  As previously discussed, the jury's verdict on a separate issue has no effect on the issue of tail coverage.  Plaintiff willingly entered into a contract with AHCMS that was negotiated with the assistance of a consultant, Chuck Naparella, as well as his personal attorney, Henry Klein.  (Id. at p. 116).  Plaintiff provides no credible reason why he should not be held to the clear terms of this agreement.  To the extent that the purchase of tail coverage would be expensive at this time, plaintiff's delay in applying for coverage caused this additional cost.

In sum, the contract clearly and unambiguously requires that Dr. Schultis provide tail coverage. Plaintiff has failed to demonstrate any basis for the court to reconsider its decision granting partial summary judgment on this basis. As such, plaintiff's Motion for Partial New Trial will be denied.

## II.     Defendant's Motion for New Trial

On October 13, 2011, defendant filed a Motion for New Trial Pursuant to Rule 59. (Doc. No. 102). Plaintiff has provided a response to defendant's motion in his Post-Hearing Memorandum. (Doc. No. 110).

In its motion, defendant argues that the jury's verdict against defendant is against the great weight of the evidence presented in the jury trial and results in a miscarriage of justice.

Federal Rule of Civil Procedure 59(a), provides, in pertinent part, "The court may, on motion, grant a new trial on all or some of the issues-and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). Rule 59(a) has been explained as follows:  In evaluating a motion for a new trial pursuant to Rule 59(a), "[t]he key question is whether a new trial should [be] granted to avoid a miscarriage of justice."  McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir.1994). A new trial is appropriate when the trial, through a verdict against the weight of the evidence or legal errors at trial, resulted in a miscarriage of justice. White v. Pence, 961 F.2d 776, 780 (8th Cir.1992).

"In determining whether or not to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." King v. Davis, 980 F.2d 1236, 1237 (8th Cir.1992) (citing White, 961 F.2d at 780).  "[T]he 'trial judge

may not usurp the function of a jury ... [which] weighs the evidence and credibility of witnesses.'" White, 961 F.2d at 780 (quoting McGee v. S. Pemiscot Sch. Dist., 712 F.2d 339, 344 (8th Cir.1983)). "Instead, a district judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred." King, 980 F.2d at 1237.

"The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). A movant may not use a motion for a new trial "to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to entry of judgment." Parton v. White, 203 F.3d 552, 556 (8th Cir.2000) (citation omitted).

Defendant argues that the great weight of the evidence established that plaintiff was notified prior to Year 2 of his contract that he would not receive full RVU weight for surgical assists. Defendant further argues that the great weight of the evidence establishes that plaintiff's receipt of full RVU credit for surgical assists compensates him for services as a primary surgeon that he did not provide, and would result in him being paid more than fair market value for his services.

The undersigned finds that defendant has failed to meet the standard required for a new trial. Plaintiff presented sufficient evidence to support the jury's verdict. Plaintiff denied that he received notification from defendant prior to Year 2 of his contract that he would not receive full RVU credit for surgical assists. Plaintiff presented the testimony of his wife, Tina Schultis, and former AHCMS employees Angela Treat and Amber Anderson to support his testimony. "[W]here reasonable men can differ in evaluating credible evidence, a new trial on the ground of weight of the evidence should not be granted." White, 961 F.2d at 781. In this case, the jury

weighed the evidence and evaluated the credibility of the witnesses and found plaintiff's witnesses to be more credible. Under these circumstances the court should not usurp the functions of the jury. See id.

### III. Bifurcated Issues Regarding Tail Coverage

As previously stated, an evidentiary hearing on the issues pertaining to the medical malpractice insurance tail coverage claims was held on December 14, 2011. (Doc. No. 106). The parties have filed post-hearing briefs. (Docs. No. 110, 111, 113).

In the parties' Joint Motion to Bifurcate Claims, the parties requested that the court bifurcate and require separate non-jury proceedings on "all of the issues pertaining to the medical malpractice insurance tail coverage claims, including, without limitation, the Plaintiff's Motion for Reconsideration of this Court's Partial Summary Judgment, determination of damages to the Defendant for Plaintiff's failure to provide said coverage, Defendant's claims in equity that Plaintiff be ordered to provide medical malpractice tail coverage, Defendant's claim for reimbursement of the insurance premiums paid from April, 2008, to December, 2008, and the amounts of any offsets to be applied against any judgment entered against the Defendant." (Doc. No. 83).

Defendant requests that the court award defendant damages or an offset against plaintiff's jury award in the amount of $29,463.36, to reimburse defendant for the general malpractice liability insurance premium payments paid from May 2008 through December 2008. Defendant admits that plaintiff did not request that AHCMS continue paying these monthly premiums on the general medical malpractice policy.

Defendant's request for an offset in the amount of $29,436.36 will be denied. Plaintiff did not request that AHCMS continue to pay these premiums, and he did not agree to the payment of the premiums.

The court has found in its order granting partial summary judgment that plaintiff is obligated under the terms of the contract to provide tail coverage. Plaintiff signed a form entitled "Authorization to Bind Coverage" on April 10, 2008, acknowledging that $54,978.00 was the price for tail coverage to cover himself and defendant at that time. (Def's Ex. FF). The parties disagree about the effect of this document. Plaintiff claims that he was just agreeing that the stated price was the price for the tail coverage the insurance company was offering at that time. Defendant contends that plaintiff's signature on the form was an application for the coverage. The lesser interpretation of the significance of plaintiff's signature is his acknowledgment that $54,978.00 was the cost of the tail coverage at that time. Defendant acknowledges that the parties agreed that a one time premium for tail coverage was $57,978.00. (Doc. No. 113, p. 12 n. 2).

In accordance with the court's interpretation of plaintiff's signature on Exhibit FF, the court finds that the value of the tail insurance plaintiff was obligated to provide was $54,978.00, as shown on the form titled "Authorization to Bind Coverage." (Ex. FF).

Pursuant to the parties' stipulated motion and order that the court determine non-jury issues including providing for possible offsets, the court will offset the $54,978.00 against the jury's verdict of $132,826.65.

Defendant's request for specific performance and plaintiff's request for prejudgment interest on his jury award will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Partial New Trial Pursuant to Rule 59 of the Federal Rules of Civil Procedure (Doc. No. 66) be and it is **denied**.

**IT IS FURTHER ORDERED** that defendant's Motion for New Trial Pursuant to Rule 59 (Doc. No. 102) be and it is **denied**.

**IT IS FURTHER ORDERED** that defendant's request for offset be **granted**, in that defendant is entitled to an offset of $54,978.00 against the jury's verdict of $132,826.65. A separate Judgment will be entered on this date.

Dated this   28th   day of March, 2012.

*Lewis M. Blanton*
LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE